the specification discloses what is the real and only feature of the article in question, upon which the right to it is based; and this characteristic is one of form, but not of what is called, in the specification, external form. The characteristic form which the inventor claims to have invented, is, broadly, any form which will enable the rubber to encompass a pencil, ink eraser, or other articles of like character. The additional words, "and present an erasive surface about the sides of the same," add nothing to the description, as it is impossible to have a piece of rubber encompass a pencil, ink eraser, or other article of similar character, without presenting an erasive surface about the sides of the same. From this form which the inventor gives to a piece of rubber—otherwise, to be of any convenient form—and from this form alone, does his article derive its value, as distinguished from rubber in any other form. By means of this form, any person is enabled easily to attach the rubber to a pencil, ink eraser, or other article of similar character; and the only useful result attained by the invention in question is, that the head can be so easily attached to any pencil. Now, what is it that accomplishes the useful result attained by the Blair pencil head? Simply, the hole made in the rubber. There must be a piece of rubber, with a cavity in it, to constitute such a pencil head as Blair's specification describes; and there need be nothing more. The cavity may be round, square, or any other shape. It may go through, or partly through, the piece of rubber; and it may be of all sizes. The article sought to be secured by this patent, briefly, and yet, as I think, fully described, consists, therefore, of a piece of India-rubber, with a hole in it. I am unable to fix any other limitation to the invention, by any fair use of the language employed in the specification and claim. Such an article cannot be the subject of a patent. The elastic and erasive properties of India-rubber were known to all, and gave to that substance the name by which it is generally designated; and how to make a piece of rubber encompass and adhere to another article, was known to every person who had ever seen a rubber shoe. No person knowing of the elastic quality of rubber, could be wanting in the knowledge, that a piece of rubber could be made to encompass and adhere to a pencil, ink eraser, or other article of similar character, by making a hole in it, nor could any one be deficient in the skill requisite to make such a hole.

I am of the opinion, therefore, that the patent in question cannot be upheld, for want of invention. This conviction, which I have been unable to escape, renders it unnecessary for me to express any opinion upon the question of abandonment, so largely discussed at the hearing, or to determine whether the patent in question is for the same invention described by Joshua Gray, in his application for a patent, and by others, who have been re-

lied on by the defence, as showing prior invention. A decree must be entered dismissing the bill, with costs.

[On appeal to the supreme court, the decree of this court was affirmed. 20 Wall. (87 U. S.) 498.]

---

## Case No. 12,103.

### The RUBY.

[5 Mason, 451.] [1]

Circuit Court, D. Maine. May Term, 1830.

SEIZURE—COMMISSION TO TAKE TESTIMONY—NEWLY DISCOVERED EVIDENCE—PRACTICE.

Notwithstanding an order of the court, closing all testimony in a cause, after a limited time, under a commission, the court will enlarge it, upon proof of newly discovered evidence, which the party could not procure to be taken under such commission, the same having come to his knowledge after the execution thereof.

This was a case of seizure. At the last May term of this court (1829), upon motion, the following order was made: "The court order this cause to be continued, on the motion of the district attorney, he assenting to the following terms and conditions: (1) That the testimony of any of the witnesses of the defendant, who have attended at the present term in behalf of the defendant, may be taken down by the clerk and used as evidence in the court. (2) That all other testimony, taken hereafter in the cause, shall be by commission, according to the common rules of the court. (3) That the commissions taken out by the United States, shall contain the names of all the witnesses to be examined under the commission, and shall be filed within sixty days after the end of the present term. And such commissions, when executed, shall be returned as soon as may be to the clerk's office, and opened by the clerk, and be subject immediately to the inspection of either party. (4) That the defendant shall be entitled to take out any commission to meet such testimony after inspection, so that the cause may be heard at the next term."

Mr. Shepley, Dist. Atty., now moved the court to enlarge the rule, so as to allow new evidence, which had come to the knowledge of the district attorney since the former order of the court had been complied with, to be taken under the commission, and admitted in the cause.

Mr. Emery, for claimants, objected, upon the ground that the application was not justified by the former order of the court, which, having been made with the assent of the district attorney, was conclusive.

STORY, Circuit Justice. We are of opinion that the former order of the court ought not to govern us under the circumstances of the present application. It would be conclusive as to any testimony known to the district attorney, and which might have been

[1] [Reported by William P. Mason, Esq.]

taken by him under the authority of the former order. But this is the case of new evidence discovered since that order was made, and not in the contemplation of the parties when the former commission was executed. It is therefore the common case of an application by the party, to avail himself of new evidence material to the merits, where there has been no prior knowledge, and of course no laches on his part to affect his rights. Even after a trial, courts of law are in the habit of granting new trials under circumstances of this sort. And if so, there can be no just reason why the application should not be entertained in a suit in admiralty, addressing itself to the sound discretion of the court. The former must be necessarily restrained in its operation to evidence antecedently existing and known to the district attorney, so that it might be taken under the former commission. Motion granted.

[NOTE. The decree of acquittal pronounced in the district court (case unreported) was affirmed on appeal by the circuit court. Case No. 12,104.]

## Case No. 12,104.

### The RUBY.

[5 Mason, 534.] [1]

Circuit Court, D. Maine. Oct. Term, 1830.

SEIZURE—BONA FIDE PURCHASERS—ADMISSIONS OF
FORMER OWNERS.

1. The declarations and admissions of the original owners of a vessel, not a part of the res gestæ, but containing a mere narrative or admission of pre-existing facts and occurrences, tending to establish a forfeiture, are not evidence against subsequent bona fide purchasers of the vessel.

2. Doubtful circumstances, which the original owners might explain, if claimants, do not press as heavily against bona fide purchasers, who are not presumed to be conversant of them.

[Appeal from the district court of the United States for the district of Maine.]

This was a libel of seizure of the schooner Ruby, for an asserted forfeiture under the coasting act of 1793, c. 52. The libel contained two counts, or allegations. The first alleged, that the Ruby being, in 1824, a vessel duly enrolled and licensed for the coasting trade, was engaged in a trade other than that for which she was licensed (section 32); the second alleged, that while she was so licensed, she proceeded on a foreign voyage, without first giving up her enrolment and license (section 8). The claimants [Asa Woodberry and others], in their claim and answer, asserted themselves to be bona fide purchasers of the Ruby, for a valuable consideration, without notice of any forfeiture, and denied the allegations of the libel. A decree of acquittal was pronounced in the district court [case unreported], from which an appeal was taken by the United States, to the circuit court.

[For a hearing on a motion to introduce new-

[1] [Reported by William P. Mason, Esq.]

ly-discovered evidence, see Case No. 12,103.]

The cause was argued at this term upon the evidence taken by the parties, by Shepley, district attorney, for the United States, and by C. S. Daveis, for the claimants. It turned principally upon questions of fact. There was much new testimony taken since the appeal.

STORY, Circuit Justice. This cause comes before the court upon the claim of bona fide purchasers for a valuable consideration without notice, at a considerable distance of time, and after many intermediate voyages, since the asserted offences were perpetrated. Under such circumstances, the court is in the habit of requiring somewhat stronger evidence to inflict the penalty of forfeiture, than it ordinarily does require, where the original owners are before the court, who may be presumed to be conversant of all the transactions. If the evidence bears against the innocence of the vessel, and yet has some imperfections and infirmities, the case will stand less favourably in respect to the original owners, than in respect to bona fide purchasers; for the former have it in their power to explain many doubtful circumstances, of which the latter may be presumed to be in utter ignorance. Those circumstances, therefore, press less hardly against the latter, than the former. If the owners may explain, but do not, their silence of itself becomes significant. It affords a corroboration of all the unfavourable conclusions, which the actual posture of the evidence justifies. And in proportion as time has intervened since the asserted transgression, the difficulty of removing apparent incongruities is presumed to increase, since it throws into obscurity many of the means of explanation. Not to yield to such considerations on the part of the court, would be to resist the ordinary results of human experience, to seek an ocasion to inflict forfeitures, rather than to indulge those presumptions of innocence, which the law throws round the party for his protection against oppression and fraud.

There is another point, suggested by the circumstances attendant upon this case, which is of a good deal of practical importance, and may affect the security of the title of purchasers in no inconsiderable degree. The declarations, and oral admissions of the original owners, have been sprinkled by the testimony with a somewhat uncommon frequency over this record. The question is, how far such declarations and admissions as to past facts and occurrences are evidence against bona fide purchasers. It is obvious, that if these declarations and admissions are evidence against purchasers at all times, and in all circumstances, in the same manner and to the same extent, as if the original owners were now sole litigants before the court, there can scarcely be any security to any derivative title. Purchasers will be in imminent peril, not only from offences, but from confession of offences, which may be imaginary and collusive, as well as real and true. On this subject, I am of